Tim SCHERMERHORN, Edward Watt, Steven Downes, John McCarthy, Neal Persaud, Noel Acevedo, Pat Jewitt, Glenn Martin, John Simino, Pete Foley, Irving Lee, Clarence Little, Thomas Bolden, Eladio Diaz, individually and on behalf of all others similarly situated, Plaintiffs–Appellants,

v.

METROPOLITAN TRANSPORTATION AUTHORITY and New York City Transit Authority, Defendants–Appellees.

Docket No. 97–9520.

United States Court of Appeals, Second Circuit.

Argued Sept. 11, 1998.

Decided Sept. 17, 1998.

Arthur Z. Schwartz, New York, NY (Kennedy, Schwartz & Cure, New York, NY, of counsel), for Plaintiffs–Appellants.

Edward A. Brill, New York, NY (Cameron Johnstone, Proskauer Rose LLP, on the brief), for Defendants–Appellees.

Before: FEINBERG, JACOBS, Circuit Judges, POLLACK,* District Judge.

PER CURIAM:

Plaintiffs, members of Local 100 of the Transport Workers Union of America (the "Union"), allege that their employers, defendants Metropolitan Transportation Authority ("MTA") and New York City Transit Authority ("TA"), colluded with the Union in a breach of the Union's duty of fair representation, in violation of New York's Taylor Law, N.Y. Civil Service Law § 209–a. Plaintiffs appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, J.) dismissing their complaint, pursuant to Fed.R.Civ.P. 56, on the ground that it is time-barred.

The complaint, filed on February 8, 1996, alleges that on June 28, 1994, Domaso Seda, then the Union president, submitted an "open offer" to the MTA and the TA in which the Union agreed that Union members would contribute (out of anticipated wage increases) to additional medical costs that would result from pension legislation then under consideration by the New York State legislature. Prior to that offer, management had paid all costs of medical benefits through contributions to a welfare benefit trust. The open offer provided that if the Union and management could not agree upon the appropriate employee contribution, the matter would be decided in arbitration, and that if the offer was accepted by management, it would become part of the next collective bargaining agreement. The pension legislation was adopted. On July 26, 1994, management signed the open offer and the Union and management entered into a new collective bargaining agreement. The new agreement was then presented to the Union membership for ratification. The complaint alleges that Union members were not informed of the terms of the agreement resulting from the open offer, and therefore that the agreement was never properly ratified by the membership.

The plaintiffs, individually and on behalf of those similarly situated, filed suit against:

(i) individual Union officials, alleging, *inter alia,* violations of their right under the Union constitution and by-laws to ratify agreements with management, as well as violations of the Labor–Management Reporting and Disclosure Act, 29 U.S.C. § 411; and

(ii) the MTA and the TA, alleging collusion with the Union in the Union's breach of its duty of fair representation by entering the agreement and collecting the employee contributions.

The district court granted defendants' motion for summary judgment dismissing the complaint as time-barred, concluding that: (i) the six-month statute of limitations for hybrid claims under § 301 of the Labor–Management Relations Act and the National Labor Relations Act applied to plaintiffs' claims; (ii) the plaintiffs knew or should have known of the material facts underlying their claims at least as early as January 1995 when one of the named plaintiffs filed an election appeal with the Union claiming that employees were not informed of the alleged agreement; and (iii) the statute of limitations was not tolled by the Union officials' denials, or by an internal Union complaint filed by one of the plaintiffs. After the district court's ruling, plain-

* Honorable Milton Pollack, of the United States District Court for the Southern District of New York, sitting by designation.

tiffs settled their claims against the Union officials, and now appeal the ruling insofar as it relates to the collusion claim against the MTA and the TA.

## DISCUSSION

On appeal, the parties agree that the claim against the MTA and the TA is governed by the Taylor Law provision relating to claims by public employees against their employer premised on their union's breach of its duty of fair representation, N.Y. Civil Service Law § 209–a, and is therefore subject to that law's four-month statute of limitations, N.Y. C.P.L.R. § 217(2)(b).

### A

The four-month limitations period begins to run when (i) the plaintiff knew or should have known of the union's breach of its duty of fair representation, or (ii) the plaintiff suffered harm from that breach, whichever is later. *Id.* The breach charged against the Union concerns an allegedly undisclosed agreement resulting from the open offer, and the claim against the MTA and the TA accrued when plaintiffs knew, or should have known, of that agreement, and suffered harm from it.

■ There can be no question that plaintiffs became aware of the existence of the agreement at the very latest in early September 1995:

(i) on September 3, 1995, plaintiffs published a bulletin claiming that they had learned conclusively that Union officials had entered into an undisclosed agreement with management that employees would pay for increased medical costs resulting from the modified pension plan;

(ii) on September 4, 1995, the TA informed its employees that it would begin to deduct .75% of wages to offset increased medical costs resulting from the modification of the pension plan; and

(iii) such wage deductions were implemented on September 7, 1995.

Plaintiffs therefore had actual or constructive knowledge of the agreement by early September 1995 (if not in January 1995, when one of the named plaintiffs filed an election appeal with the Union relating to the allegedly undisclosed agreement). Plaintiffs argue that they believed that the wage deductions were required to be made by the pension legislation, not by the Union's contractual undertaking; however, disclosures of the agreement would have caused a reasonable person to question this assumption, and plaintiffs cannot disclaim access to public laws.

As to the second possible accrual date—when plaintiffs suffered harm as a result of the Union's breach—it is uncontested that starting September 7, 1995, the MTA and the TA withheld (as an interim measure pending a final arbitration decision on the proper contribution amount) .75% of Union members' wages pursuant to the allegedly improper agreement. Thus, more than four months prior to the commencement of their suit, plaintiffs knew or should have known of the Union's alleged breach, and had suffered harm from that breach.

### B

■ Plaintiffs argue that the statute of limitations should be tolled because Union officials continually denied that there was such an agreement, and because plaintiffs lacked any basis for challenging those assertions. We disagree. First, the denials were equivocal; Seda and other Union officials acknowledged on several occasions that the Union had agreed with management that employees would pay the increased medical costs. *See, e.g.,* Joint Appendix at 210–11 (newspaper article reporting that Union members who elected the modified pension plan would have to pay increased medical costs, the actual figure being in dispute); *id.* at 215 (letter from Seda to Union membership noting that "[i]n order to obtain this Pension Improvement Legislation, this Union promised to have the membership absorb any additional costs in the area of Health & Welfare"). Second, as the district court noted, the plaintiffs acted on their suspicions by filing Union and Department of Labor complaints in January and April 1995, respectively, and were not induced to refrain from timely commencing suit by the officials' deni-

als. *See Overall v. Estate of Klotz*, 52 F.3d 398, 404 (2d Cir.1995).

Additionally, plaintiffs argue that the four-month limitations period should be tolled by an internal Union grievance filed by one of the plaintiffs on December 29, 1995, seeking discipline of the Union officials responsible for the undisclosed agreement. As plaintiffs concede, their claim against the MTA and the TA is governed by state law. We therefore look to state-law tolling rules to determine whether the statute of limitations was tolled by plaintiffs' Union grievance. *See Diffley v. Allied–Signal, Inc.*, 921 F.2d 421, 423 (2d Cir.1990) ("In diversity cases, state statutes of limitations govern the timeliness of state law claims, and state law determines the related questions of what events serve to commence an action and to toll the statute of limitations.") (internal quotation marks and citations omitted).

"As a rule . . . time limitations created by statute are not tolled in the absence of statutory authority. Courts may only 'construe provisions made by the Legislature creating exceptions or interruptions to the running of the time limited by statute. . . . They may not themselves create such exceptions.' " *King v. Chmielewski*, 76 N.Y.2d 182, 187, 556 N.Y.S.2d 996, 998, 556 N.E.2d 435 (1990) (quoting *Mack v. Mendels*, 249 N.Y. 356, 359, 164 N.E. 248 (1928)). There is no New York statutory provision tolling the statute of limitations while an employee pursues an internal union grievance for claims against a public employer arising from a union's breach of its duty of fair representation, and plaintiffs cite no New York case that has tolled the limitations period in such circumstances. Typically, New York does not allow administrative or union grievances to toll the statute of limitations on claims against public entities in article 78 proceedings. *See, e.g., Vasbinder v. Hartnett*, 129 A.D.2d 894, 895, 514 N.Y.S.2d 530, 531 (3d Dep't 1987) (noting that "invocation of a grievance procedure will not serve to toll the statutory time limit prescribed by CPLR [§ ] 217" for article 78 proceedings).

Several factors specific to this case also counsel against tolling: (i) the internal Union complaint merely sought discipline of Union officials; (ii) in any event, the Union's grievance procedure could not have remedied the Union's breach and the employer's collusion through rescission of the allegedly unlawful agreement or otherwise; and (iii) recognizing this fact, plaintiffs did not await the outcome of that proceeding before filing this action. *Cf. Majka v. Utica City School Dist.*, 668 N.Y.S.2d 831, 832 (4th Dep't 1998) (refusing to toll statute of limitations for article 78 proceeding where "pending arbitration proceeding was not instituted by the parties in order to resolve the present controversy"). We therefore conclude that New York courts would not toll the statute of limitations for the period during which plaintiffs pursued their internal Union grievance.

The judgment of the district court is affirmed.